J-S37026-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRE LEWIS | : | |
| | : | |
| Appellant | : | No. 1198 EDA 2017 |

Appeal from the Judgment of Sentence Entered March 10, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0010726-2014

BEFORE:   OLSON, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED NOVEMBER 08, 2018**

Andre Lewis appeals from the judgment of sentence imposed following his conviction for Intimidation of a Witness. Lewis argues that there was insufficient evidence to support the conviction, the trial court erred in overruling his objections to prosecutorial misconduct, and his sentence was excessive. We affirm.

Lewis was tried before a jury in March 2017 on the charges of Intimidation of a Witness, Aggravated Assault, Terroristic Threats, and Possession of an Instrument of Crime.[1] The victim, a former paramour of Lewis, testified that Lewis assaulted her in front of her home and threatened her with a knife. Her mother called 911, and when the police arrived, they

_____

\* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 4952(a)(1), 2702(a)(1), 2706(a)(1), and 907(a).

escorted the victim to the place where they had apprehended Lewis, so that the victim could identify him. The victim testified that after she identified Lewis, "as [the police hand]cuffed [Lewis] and put him on the ground, he told me, excuse my French[,] 'Bitch, don't—I hope you don't come to court.'" Notes of Testimony, 3/8/17 (Trial), at 47. A police officer testified that when he was arrested, Lewis originally provided a false name to police and was "belligerent" and shouting threats at the victim. *Id.* at 104-06. Specifically, the officer recalled that Lewis told the victim, "If you show up to court, bitch, I'm gonna hurt you." *Id.* at 107. Another officer similarly testified that Lewis said "Bitch, you better not show up to court." *Id.* at 122. The Commonwealth also introduced photographs of the victim's injuries and the testimony of the victim's mother. Lewis testified, and denied assaulting or threatening the victim.

Some of the testimony focused on an envelope that Lewis received while in prison that the defense suggested the victim sent to him. When Lewis's attorney cross-examined the victim, he showed her the envelope, and the victim denied writing or sending it, pointing out that there was no return address, that it was not written in her handwriting, and that she did not use the nickname for Lewis to which the letter was addressed. Lewis testified that the top portion of the envelope—where the return address and stamp would go—was missing because prison officials routinely remove that portion when they received and opened mail, and that the envelope was not of the sort he

could obtain himself while in the prison. The envelope was not entered into evidence.

Lewis's counsel argued to the jury that the photographs of the victim's injuries did not align with the severity of her testimony of the incident and that the victim was not credible for other reasons, such as inconsistency in her grand jury testimony. Lewis's counsel also claimed that the officers who testified to the threats were not credible because they had not included the verbal threats in their initial report and did not remember all of the details surrounding the arrest. Regarding the envelope, Lewis's counsel argued that Lewis did not send it to himself from prison, and pointed out that if Lewis had been trying to forge a letter from the victim, he would have included a bogus return address on a portion of the envelope that would not have been routinely removed by prison authorities.

The prosecution generally argued during closing that the Commonwealth's witnesses and evidence were credible and consistent. The prosecutor stated that "[defense counsel was] really stretching [it]" when he pointed out a discrepancy in an officer's testimony, to which Lewis objected. N.T., 3/9/17 (Closing Arguments), at 55. The Commonwealth also repeatedly stressed that Lewis was not a credible witness. Relevant to this appeal, when recounting that Lewis had cried while an officer was testifying during trial, the prosecutor stated, "It's too bad the Oscars were a couple of weeks ago because [Lewis would] be up for an [A]cademy [A]ward." *Id.* at 51. The Commonwealth also argued that the envelope that Lewis received in prison

was fake, and "a cynical attempt by [Lewis] to perpetrate a fraud" on the jury. *Id.* at 50. Lewis objected to both of these statements as well. The jury convicted Lewis of Intimidation of a Witness, but found him not guilty of the other charges.

At sentencing, the court offered both Lewis and the Commonwealth the option of delaying sentencing in order to conduct a pre-sentence investigation and mental health evaluation. N.T., 3/10/17 (Sentencing), at 5. Both Lewis and the Commonwealth declined, and when the court asked Lewis if he wanted to be sentenced that day, Lewis responded, "Yes." *Id.*

Defense argued that Lewis told the victim not to come to court because he was angry that the victim was wrongfully accusing him of assault and that if Lewis received a sentence of probation, there would be little chance of recurrence of the offense, since Lewis would be unlikely to interact with the victim in the future. *Id.* at 10-11. The Commonwealth argued that Witness Intimidation is a significant problem in Philadelphia, and that the victim had been terrified to come to court. *Id.* at 12-14. The Commonwealth also recounted the facts of Lewis's prior conviction for terrorist threats, where Lewis had told a police officer that he was going to "blow [his] head off," and for which Lewis's conviction in the instant case constituted a violation of the terms of his probation. *Id.* at 14-15.[2] The prosecutor stated that Lewis had

---

[2] The court was sentencing Lewis for the violation of probation at the same time that it was sentencing Lewis on the conviction in the instant case.

- 4 -

told the officer, "I'm just going to cry in front of the judge and get off like I did last time." *Id.*

Lewis exercised his right to allocution, emphasizing that he has been in the custody of Pennsylvania's Department of Human Services since the age of nine and has no family and little formal education. *Id.* at 17, 20. He also stated that he had been working on obtaining his General Educational Development diploma, playing in a basketball league, and working for a cleaning company before he was arrested. *Id.* at 18-20. He maintained he did not intend to keep the victim from coming to court, that "people make mistakes," and that sending him to serve more prison time would "do nothing but make [him] a worse person." *Id.* at 19-21.

The court sentenced Lewis to eight to 16 years' incarceration. The court stated that it had considered Lewis's prior record score, the offense gravity score, the guidelines range, the trial testimony, Lewis's history and character, and his allocution. *Id.* at 21. The court articulated that it was concerned with "the lack of responsibility he has taken for his actions, [and] the fact he is very concerned with himself and does not seem to understand that in society, it's not just about who you are[,] it's about how you treat other people." *Id.* at 21-22.

Lewis filed a Motion to Reconsider his sentence. At the hearing on the Motion, his counsel complained that the court had sentenced Lewis without a pre-sentence investigation report, and that the sentence was above the aggravated range of the Sentencing Guidelines. Lewis's counsel requested a

resentencing in order "to explore different options and maybe change [the sentencing judge's] mind as to why the sentence should not be as high as it is." N.T., 3/22/17 (Motion), at 4. The court denied the Motion, and stated that "[a]ny lesser sentence would depreciate the seriousness of the crime that [Lewis] was convicted of," and that its sentence was designed to deter others from committing a similar crime. *Id.* at 4-6. The court noted that Lewis committed intimidation of a witness "in the presence of her family members [and] police officers," and stated that it considered Lewis's "mental, emotional, and previous psychological problems," his prior arrests, and the injuries to the victim. *Id.* at 5. The court found that Lewis was "a poor candidate for rehabilitation" and that he "showed no remorse during the course of his allocution." *Id.*

Lewis filed a timely Notice of Appeal, and raises the following issues:

(A)   Was there insufficient evidence to find [Lewis] guilty of witness intimidation[?]

(B)   The prosecutor committed misconduct when he mischaracterized the evidence and mislead the jury as to inferences it could draw when discussing a letter Lewis had "someone write" to him while [Lewis] was in jail and that Lewis was "perpetrating a fraud" in doing so.

(C)   The trial court failed to sustain an objection or give a cautionary instruction to the jury when the prosecutor committed misconduct when commenting on Lewis' testimony[.] He stated, "It's too bad the Oscars were a couple of weeks ago[,] because [Lewis] would be up for an Academy Award."

(D)   The trial court failed to sustain an objection or give a cautionary instruction to the jury when the prosecutor committed misconduct when stating that defense counsel was "really

stretching it" in his closing argument when he commented on evidence in the case.

(E) The court abused its discretion when it sentenced Lewis to a period of incarceration of 8-16 years based on the single cha[r]ge of Witness Intimidation[.] This sentence was well outside of the Guideline range and there was insufficient reasoning on the record as to why this was an adequate sentence.

Lewis's Br. at 8 (unnecessary capitalization omitted).[3]

## I. Sufficiency of the Evidence

In his first issue, Lewis argues that there was insufficient evidence to convict him of Witness Intimidation under 18 Pa.C.S.A. § 4952. The trial court found the issue waived, as Lewis's Pa.R.A.P. 1925(b) statement did not specify which elements of Witness Intimidation were unproven at trial. *See* Trial Court Opinion, filed Sept. 11, 2017, at 3. Nevertheless, the court concluded that the claim lacked merit, because Lewis "attempted to dissuade the [victim] from testifying in court[.] This threat was made in the presence of law enforcement, who corroborated the [victim]'s account." *Id.* at 4.

Because, in the instant case, the facts comprising the elements of the crime are relatively straightforward, and the trial court addressed them, we shall review the sufficiency of the evidence, which is a question of law. *See Commonwealth v. Laboy*, 936 A.2d 1058 (Pa. 2007); *Commonwealth v. Williams*, 871 A.2d 254, 259 (Pa.Super. 2005). Our standard of review "requires that we evaluate the record 'in the light most favorable to the verdict

---

[3] As the transcripts of trial and sentencing were not originally included with the certified record, we issued a *per curiam* order on July 27, 2018, directing the trial court to supplement the certified record. We received the necessary transcripts on August 17, 2018.

winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.'" **Commonwealth v. Rahman**, 75 A.3d 497, 500 (Pa.Super. 2013) (quoting **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000)). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." **Id.** (quoting **Commonwealth v. Brewer**, 876 A.2d 1029, 1032 (Pa.Super. 2005)). The Commonwealth may prove guilt through wholly circumstantial evidence, and the fact-finder may accept all, part, or none of the evidence presented at trial. **Commonwealth v. Doughty**, 126 A.3d 951, 958 (Pa. 2015); **Williams**, 871 A.2d at 259.

In order for a person to be convicted of Intimidation of a Witness under the relevant section of the statute, the Commonwealth must introduce evidence to establish beyond a reasonable doubt that the person,

> with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, . . . intimidate[d] or attempt[ed] to intimidate any witness or victim to . . . [r]efrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

18 Pa.C.S.A. § 4952(a)(1).

Lewis first argues that the victim's injuries did not match her testimony describing the attack because she fabricated the assault (hence, the jury acquitted Lewis of the assault charge). Lewis claims that his statements were

therefore not actual threats, but rather expressions of his "indignation that [the victim] would make false statements against him," and that he made them while he was "upset that he was being falsely arrested." Lewis's Br. at 13.

We find no merit to this claim. The Commonwealth need only prove that the defendant had knowledge, and not specific intent, that his conduct was likely to obstruct, impede, impair, prevent, or interfere with the administration of criminal justice, and the Commonwealth may do so using circumstantial evidence. *See* 18 Pa.C.S.A. § 4952; ***Commonwealth v. Beasley***, 138 A.3d 39, 48 (Pa.Super. 2016) (citing ***Commonwealth v. Collington***, 615 A.2d 769, 770 (Pa.Super. 1992)). Viewing the evidence in the light most favorable to the Commonwealth, Lewis threatened the victim with violence if she testified against him, and objectively knew that his words were likely to interfere with her decision to speak with police or testify against Lewis, even if Lewis did not subjectively intend for the victim to feel threatened.

Second, Lewis argues that there was no testimony that Lewis's statements actually intimidated the victim, and the victim's appearance in court proves that she was not intimidated. Proof of actual intimidation is not required, as the definition of the crime of intimidation of a witness includes an attempt to intimidate. ***Beasley***, 138 A.3d 39, 48 (citing ***Collington***, 615 A.2d at 770). We therefore hold that Lewis's first issue lacks merit.

## II. Prosecutorial Misconduct

In Lewis's second, third, and fourth issues, he claims that the prosecutor made remarks in his closing argument that constituted prosecutorial misconduct. The trial court found these issues waived, because although Lewis made timely objections to the alleged misconduct, he did not raise the issues in his post-sentence motion. *See* Trial Ct. Op. at 5. Despite finding the issues waived, the court addressed the merits, and found that "[t]he prosecutor's comments . . . were made in response to defense counsel's strategy as well as [Lewis's] own behavior and testimony at trial." *Id.* at 6. The court explained that "[t]he prosecutor merely remarked on the veracity of [Lewis]'s narrative and argued to the jury that the timeline and theory presented by the defense was illogical and inconsistent." *Id.* The court also found that the remarks were unlikely to prejudice Lewis, as the evidence of the crime was overwhelming, and that the jury was not prejudiced by the remarks, as evidenced by Lewis's acquittal on the other charges. *Id.*

Although Lewis was not obligated to preserve these issues through the filing of a post-sentence motion, *see* Pa.R.Crim.P. 720(B)(1)(c) ("Issues raised before or during trial shall be deemed preserved for appeal whether or not the defendant elects to file a post-sentence motion on those issues"), the trial court is correct that Lewis's contemporaneous objections to the prosecutor's statements were not sufficient to preserve his claims. Lewis was required to request specific relief in the form of a mistrial or a curative jury

instruction. *See **Commonwealth v. Brown***, 134 A.3d 1097, 1107, (Pa.Super. 2016); ***Commonwealth v. Sandusky***, 77 A.3d 663, 670 (Pa.Super. 2013). As he did not do so, his issues are waived.

However, even if Lewis had preserved his claims, he would be due no relief. "Argument must be based upon matters in evidence, or upon the legitimate inferences that can be drawn from that evidence," ***Commonwealth v. Johnson***, 139 A.3d 1257, 1275 (Pa. 2016) (citation omitted), and "it is improper for a prosecutor to express a personal opinion as to a defendant's guilt or the credibility of a defendant or other witnesses." ***Commonwealth v. Weiss***, 776 A.2d 958, 969 (Pa. 2001) (citation omitted). However, "[a] prosecutor enjoys reasonable latitude during closing arguments, and may advocate with force, vigor, and oratorical flair," ***Johnson***, 139 A.3d at 1275 (citation omitted), and "[i]f defense counsel has attacked the credibility of witnesses in closing, the prosecutor may present argument addressing the witnesses' credibility." ***Commonwealth v. Chmiel***, 889 A.2d 501, 544 (Pa. 2005). Ultimately, a prosecutor's comments "are not a basis for the granting of a new trial unless the *unavoidable effect* of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict." ***Weiss***, 776 A.2d at 968 (quoting ***Commonwealth v. Jones***, 683 A.2d 1181, 1199 (Pa. 1996) (emphasis in ***Weiss***).

Here, Lewis complains that the prosecutor stated that Lewis "would be up for an Academy Award" for crying during another witness's testimony, and that defense counsel's analysis of some of the trial testimony was "really stretching it." Lewis's Br. at 15. Lewis also complains that the prosecutor told the jury that Lewis was "perpetrating a fraud" by forging and sending himself a letter which Lewis's attorney had suggested had been sent from the victim. *Id.* Lewis argues that each of these three statements by the prosecutor was either not supported by the record or consists of the prosecutor's personal opinion about Lewis's credibility.

Lewis is not entitled to relief because he has not established that these statements, or any one of them, would have unavoidably prejudiced the jury against rendering a true verdict. *See Weiss*, 776 A.2d at 523-24 and 523 n.8 (holding that prosecutor's characterization of defendant's testimony as "fairy tales" did not unavoidably prejudice jury). Moreover, the prosecutor was responding to Lewis's closing argument. In his closing statement, Lewis's attorney addressed Lewis's credibility, errors in the police report, and a letter that defense counsel contended the victim may have sent to Lewis. *See* N.T. (Trial) at 35, 37-38. It was therefore proper for the prosecutor to address the believability of this evidence. *See Chmiel*, 889 A.2d at 544. Additionally, as the trial court noted, the evidence against Lewis on the charge of Witness Intimidation, which consisted of the testimony of the victim and two officers, was overwhelming. Therefore, any prejudice from the prosecutor's remarks

was harmless. **See id.** at 529 (stating that harmless error exists where prejudicial effect was insignificant in comparison with overwhelming evidence of guilt). Finally, the trial court instructed the jury that closing arguments were not evidence, **see** N.T. (Trial) at 24, and we presume that the jury followed this instruction. **See Weiss**, 776 A.2d at 970. We therefore hold that Lewis is due no relief on his claims of prosecutorial misconduct.

### III. Length of Sentence

Lewis argues that his sentence of a minimum of eight years' incarceration was excessive as it was not only above the Sentencing Guidelines' standard range (a minimum sentence of 42 to 60 months in prison) but also the aggravated range (a minimum sentence of 72 months in prison). Lewis further argues that the court imposed the lengthy sentence because it took into account the other charges for which the jury found him not guilty, and that the court failed to explain how the sentence "was the least stringent one adequate to protect the community and to serve the rehabilitative needs of [Lewis]." Lewis's Br. at 18. Lewis complains that when the court stated it would not tolerate witness intimidation "not just in this case, but throughout our society in terms of getting these very serious crimes to trial," it indicated that it was sentencing him "based upon sending a message to others based upon past experiences in getting cases to trial." **Id.** at 20.

Lewis thus argues that the court abused its discretion because it did not engage in individualized sentencing or consider the factors listed in 42

Pa.C.S.A. § 9721(b), including his "age, life circumstances, or amenability to treatment or rehabilitation, or even his future dangerousness." Lewis's Br. at 19. Lewis claims he has a minimal criminal record, and "lead[s] an otherwise law-abiding life." *Id.* Lewis also argues that although he requested to proceed without a pre-sentence investigation report, the court should have nonetheless conducted a detailed questioning of Lewis in order to tailor its sentence.

As Lewis challenges the discretionary aspects of his sentence, we must first determine whether: (1) the appeal is timely, (2) the instant issue was properly preserved, (3) the appellant's brief contains a statement pursuant to Pa.R.A.P. 2119(f),[4] and (4) there is a substantial question that the sentence is not appropriate under the Sentencing Code. ***Commonwealth v. Machicote***, 172 A.3d 595, 602 (Pa.Super. 2017).

We find that Lewis's appeal was timely and his brief includes a Pa.R.A.P. 2119(f) statement. However, the only issues Lewis raised in his post-sentence motion and related hearing were the length of his sentence and the court's failure to order a pre-sentence investigation. Lewis's other issues are therefore waived. ***See*** Pa.R.A.P. 302 (issues cannot be raised for the first time on

---

[4] "An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of the sentence." Pa.R.A.P. 2119(f).

appeal); ***Commonwealth v. Mann***, 820 A.2d 788, 794 (Pa.Super. 2003) (issues challenging discretionary aspects of sentencing must be raised in post-sentence motion or raised during sentencing proceedings).

We therefore address whether Lewis's remaining issues have presented a substantial question that his sentence is inappropriate under the Sentencing Code. "A substantial question exits only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa.Super. 2013) (citation omitted). A claim of excessiveness raises a substantial question, as does the allegation that the sentencing court imposed a sentence without a pre-sentence investigation report. ***See Commonwealth v. Kelly***, 33 A.3d 638, 640 (Pa.Super. 2011); ***Commonwealth v. Flowers***, 950 A.2d 330, 332 (Pa.Super. 2008) (citing ***Commonwealth v. Goggins***, 748 A.2d 721, 728 (Pa.Super.2000)). We therefore review the merits of these claims, acknowledging that the trial court exercises broad discretion in sentencing matters. ***Commonwealth v. Antidormi***, 84 A.3d 736, 760 (Pa.Super. 2014).

Having reviewed the reasons given by the trial court for its sentence, we find that Lewis has presented no colorable argument as to why his sentence was too severe. Nor does Lewis present reasons for a shorter sentence that were not already specifically considered by the trial court.

Moreover, a sentencing court is not required to order a pre-sentence investigation report, but rather needs only state its reasons on the record for not doing ordering one. *See* Pa.R.Crim.P. 702(A)(2). Here, Lewis stated on the record that he wanted the court to sentence him on the date of his conviction, and his counsel stated that Lewis was declining the court's offer to delay sentencing and order a pre-sentence investigation. We therefore conclude that the court's reasoning for deciding to forego a pre-sentence investigation was apparent on the record.

In addition, "[t]he essential inquiry" is not whether the court obtained a pre-sentence investigation report, but "whether the sentencing court was apprised of comprehensive information to make the punishment fit not only the crime but also the person who committed it." *Commonwealth v. Finnecy*, 135 A.3d 1028, 1032 (Pa.Super. 2016) (citation omitted). Lewis did not raise in his post-sentence motion any material background information or relevant factors that the court failed investigate and consider at the time of sentencing that would have been included in a pre-sentence investigation report. Instead, at the hearing, Lewis's attorney baldly stated that the court should reconsider sentence because there had been no pre-sentence investigation report and this "didn't make [counsel] as effective as [he] could have been even though it was [Lewis's] wish to go forward." N.T. (Motion) at 3. Nor has Lewis on appeal set forth any information that would have been

included in a pre-sentence investigation report that the court did not consider that may have altered its sentence.

Given the argument presented at sentencing and the reasoning stated by the court on the record, we conclude that the trial court did not abuse its discretion in formulating Lewis's sentence, and hold that Lewis's final issue merits no relief. As Lewis has presented no meritorious issues, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/8/18