J-S66015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID BARROW | |
| Appellant | No. 3382 EDA 2018 |

Appeal from the Judgment of Sentence entered August 17, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0009416-2016

BEFORE:  STABILE, NICHOLS, JJ., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:  **FILED FEBRUARY 28, 2020**

Appellant, David Barrow, appeals from the judgment of sentence imposed on August 17, 2017 in the Court of Common Pleas of Philadelphia County following Appellant's convictions of intimidation of a witness/victim, retaliation against a witness or victim, and simple assault stemming from events that occurred on August 15, 2016.[1]  Appellant contends the evidence was insufficient to support his convictions.  Alternatively, he argues the verdicts were against the weight of evidence.  Upon review, we affirm.

---

[1] 18 Pa.C.S.A. §§ 4952(a)(1), 4953(a), and 2701(a), respectively.  The jury acquitted Appellant of aggravated assault, firearms not to be carried without a license, carrying firearms in public in Philadelphia, and possession of an instrument of crime, all arising from events that occurred the previous day.

The trial court summarized the factual background with citations to the trial transcript. Trial Court Opinion, 2/25/19, at 2-4. Briefly, as of August 14, 2016, the Complainant in this case, Hafiz Bailey ("Bailey"), was residing with his cousin, Keith Henson ("Henson"), at a house on 20th Street in Philadelphia. On that day, Henson called Bailey to say that Bailey's .380 Jenkins semiautomatic gun had been stolen. While they were still on the phone, Bailey saw Appellant running from Henson's home and could see a bulge under Appellant's shirt.

Bailey ran after Appellant to Appellant's home where Bailey tapped Appellant's pocket and asked Appellant if he had the gun. Appellant pulled out Bailey's gun, told him to "[g]et the fuck back," and fired a shot at Bailey's torso. The shot missed Bailey who took off running across the street to a gas station where he called the police.

During the 911 call, Henson arrived at the gas station. Bailey and Henson began to argue about Appellant, who was a friend of Henson's. When Bailey asked Henson where Appellant's gun was, Henson placed a .25 caliber handgun in Bailey's pocket and told Bailey the gun was Appellant's.

When the police arrived, Bailey was placed in a police car and was taken to identify the person who stole his gun and shot at him. When Bailey informed the police officer that he had a gun in his pocket, the officer removed the gun and placed Bailey under arrest. While under arrest, Bailey identified

Appellant as the shooter and both were taken separately to the 35th District station.

> As the trial court explained:
>
> Upon arrival at the 35th District, sometime in the early morning of August 15, 2016, [Bailey] and [Appellant] were placed in two separate cells. While in their separate cells, [Appellant] began belligerently yelling out to [Bailey], telling him that the detective was coming to get [Bailey] soon, asked [Bailey] not to say anything about the stolen gun, and told [Bailey] that they needed to be on the same page. [Appellant] proceeded to ask [Bailey] why he was snitching on [Appellant], to which [Bailey] responded "just leave it alone."
>
> On August 15, 2016 around 8:15 PM, Police Officer Henry Lewis was assigned five defendants, including [Bailey] and [Appellant], to escort them to the closed circuit television ("CCTV") room to communicate remotely with the arraignment judge. Once each person was arraigned, they received their subpoena and proceeded to the back of the room for an opportunity to make a phone call using one of the pay phones. [Appellant] had been arraigned prior to [Bailey] and was already speaking on one of the pay phones when [Bailey] was sent to the back of the room to use the pay phone.
>
> As [Bailey] was headed toward the pay phones, he saw [Appellant] who proceeded to ask him what he had said to the detectives. [Bailey] responded that he had told them the truth. During this time, Officer Lewis heard unintelligible words coming from the pay phones, banging against a trash can, and a phone falling. As soon as Officer Lewis heard the commotion, he ran to the pay phone area to find out what was happening. Upon arriving at the pay phone area, Officer Lewis saw [Appellant] flip [Bailey] onto his back, head first, onto the concrete floor and a trash can. Then, [Appellant] fell on top of [Bailey] and began to choke him by placing his arm around [Bailey's] neck and choking him until police officers arrived and separated them. [Bailey's] head injury required 5 staples, which he received at Einstein Medical Hospital.

***Id.*** at 3-4 (references to Notes of Testimony omitted).

As noted above, a jury convicted Appellant of intimidation, retaliation, and simple assault. On August 17, 2017, the trial court imposed a sentence of eight to twenty years in prison for intimidation with consecutive probationary periods of four and two years each for retaliation and simple assault, respectively. Appellant's motion for reconsideration was denied on September 14, 2017. Appellant's appeal rights were reinstated *nunc pro tunc* and he filed a notice of appeal on November 25, 2018. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant asks us to consider three issues in this appeal:

[1.] Is the evidence sufficient to convict [Appellant] of witness intimidation and retaliation against a witness?

[2.] Is the evidence sufficient to convict [Appellant] of retaliation against a witness where that offense only applies when the person intimidated is a "witness, victim or a party in a civil matter" and there was never a civil matter contemplated, initiated or pending with respect to complainant in the case *sub judice*?

[3.] Is the verdict of guilty with respect to the charges of witness intimidation and retaliation against a witness against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice under the circumstances of this case?

Appellant's Brief at 7.[2]

Appellant's first two issues question the sufficiency of evidence to support his convictions generally and, more specifically, with regard to the meaning of the phrase, "witness, victim or a party in a civil matter" in 42

---

[2] We note that Appellant does not challenge in any respect his simple assault conviction.

Pa.C.S.A. § 4953(a). In **Commonwealth v. Rushing**, 99 A.3d 416 (Pa. 2014), the Court was similarly faced with a general sufficiency challenge as well as a question of interpretation of a statutory phrase. Addressing the applicable standard of review, the Court stated:

> In one respect, this appeal raises the pure legal question regarding the proper interpretation of the statutory phrase "place of isolation." As the proper interpretation of a statute is a pure question of law, our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Daniels**, 600 Pa. 1, 963 A.2d 409, 417 (2009). Yet, the appeal also presents the question of whether there was sufficient evidence to support a conviction for kidnapping, as that crime is properly interpreted. Thus, with respect to our sufficiency review, our standard of review is *de novo*, however, our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner. **Commonwealth v. Diamond**, 623 Pa. 475, 83 A.3d 119, 126 (2013); **Commonwealth v. Robinson**, 581 Pa. 154, 864 A.2d 460, 478 (2004).

*Id.* at 420-21. We shall apply the same standards to the sufficiency challenge to Appellant's intimidation and retaliation convictions and to the interpretation of the statutory phrase "witness, victim or a party in a civil matter."

> A person commits an offense of intimidation
>
> if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:
>
> > (1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

18 Pa.C.S.A § 4952(a)(1). A person commits an offense of retaliation

if he harms another by any unlawful act or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything lawfully done in the capacity of witness, victim or a party in a civil matter.

18 Pa.C.S.A. § 4953(a).

Appellant contends the evidence was insufficient to support either conviction because he was acquitted on the underlying charge of aggravated assault with respect to the alleged attempt to shoot Bailey. Because the jury found him not guilty, he argues, there was no criminal conduct and the convictions of intimidation and retaliation cannot stand. We cannot agree. As the trial court observed:

> Evidence is sufficient to convict a defendant of witness intimidation under Pa.C.S.A. 4952(a)(1) if the evidence demonstrates that the defendant had the necessary *mens rea* to "attempt" to intimidate a witness or victim. **Commonwealth v. Collington**, 615 A.2d 769, 770 (Pa. Super. [] 1992). Whether a statement or conversation "contains sufficient indicia of intimidation is to be determine[d] by the fact finder and assessed under the totality of the circumstances, cognizant that proof of manifest threats is not required." **Commonwealth v. Doughty**, 126 A.3d 951, 957 (Pa. 2015).
>
> . . .
>
> Here, [Appellant's] belligerent shouting at [Bailey] that the detective was coming for [Bailey] and that they needed to get on the same page along with [Appellant's] taunt of "Why are you snitching?" showed [Appellant's] intent to antagonize and intimidate [Bailey]. After arraignment, [Appellant] physically attacked [Bailey] upon learning that he had told the detective that [Appellant] had stolen his gun. [Appellant's] conversation with [Bailey] and subsequent attack of [Bailey] were sufficient to permit an inference that [Appellant's] actions were for the purpose of intimidating [Bailey] whose testimony was crucial to establish the charges of aggravated assault and [weapons violations] and that [Appellant] physically assaulted [Bailey] in retaliation for

[Bailey] telling the detective about the stolen gun. These facts are more than sufficient evidence to sustain both the witness intimidation and retaliation against a witness convictions.

Trial Court Opinion, 2/25/19, at 9-11.

Reviewing the evidence, including all reasonable inferences, in a light most favorable to the Commonwealth as verdict winner, we agree with the trial court that the Commonwealth established the elements of intimidation and retaliation beyond a reasonable doubt. Therefore, Appellant's first issue fails.

In his second issue, while Appellant phrases his challenge as a challenge to the sufficiency of evidence to support his retaliation conviction, he is actually questioning the interpretation of the phrase in the retaliation statute that indicates the offense applies to an intimidated person in that person's "capacity of witness, victim or party in a civil matter." 42 Pa.C.S.A. § 4953(a).

In his two-part challenge, Appellant first asserts that Bailey was neither a witness nor a victim because Appellant was acquitted of aggravated assault charges stemming from the events of August 14, 2016, *i.e.*, Bailey's claim that Appellant fired a shot at his torso. However, as the Commonwealth counters, "It is well settled that an acquittal of one charge is not a specific finding of fact with respect to any other charge." Commonwealth Brief at 8 (citing, *inter alia*, **Commonwealth v. Talbert**, 129 A.3d 536, 545 (Pa. Super. 2015) and **Commonwealth v. Miller**, 35 A.3d 1206 (Pa. 2012)). Further,

consistency in a verdict is not required. *Miller*, 35 A.3d at 1213. *See also*

*Commonwealth v. Rose*, 960 A.2d 149, 158 (Pa. Super. 2008).

> As the trial court noted:
>
> [I]t is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment. When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity. Thus, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict.

Trial Court Opinion, 2/25/19, at 6 (quoting *Rose*, 960 A.2d at 158) (citation

omitted). Moreover,

> a defendant need not be convicted of the underlying crime or crimes to be found guilty of witness intimidation or retaliation against a witness as evidenced by the language found in the grading section of the statute where it explicitly states that witness intimidation or retaliation against a witness is to be graded based on the most serious offense *charged* in the case, not based on the most serious charge continuing to exist at the time of sentencing, *i.e.*, the most serious charge [of which] the defendant was ultimately convicted.

*Id.* at 6 (emphasis in original) (citing 42 Pa.C.S.A. §§ 9452(b) and 9543(b).

The trial court cited *Commonwealth v. Felder*, 75 A.3d 513 (Pa.

Super. 2013), in which the appellant was charged with aggravated assault and

intimidation as well as conspiracy and simple assault and related charges.

Trial Court Opinion, 2/25/19, at 6. In *Felder*, the jury convicted Felder of

intimidation, but was deadlocked on aggravated assault. The court imposed

a sentence for intimidation as a felony of the first degree under Section

4952(b)(2). Felder argued the court should not have imposed a sentence for a first-degree felony in light of the jury's inability to reach a verdict on aggravated assault and the Commonwealth's decision to *nolle pros* the charge prior to sentencing.

This Court rejected Felder's argument, explaining:

Subsection 4952(b) provides a clear roadmap for the grading of witness/victim intimidation offenses. If "a felony of the first-degree . . . was charged in the case," then the offense of witness/victim intimidation is graded as a first-degree felony. 18 Pa. C.S.A. § 4952(b)(2). If the most serious offense charged in the case was a second degree felony, then the witness/victim intimidation offense is graded as a second-degree felony. 18 Pa. C.S.A. § 4952(b)(3). If no first-degree or second-degree felony was charged in the case, but the criminal defendant nevertheless sought to influence or intimidate a witness or victim in any manner described in subsection 4952(b)(1), then the witness/victim intimidation offense is graded as a third degree felony. 18 Pa. C.S.A. § 4952(b)(4). In all other cases, the offense of witness/victim intimidation is graded as a second-degree misdemeanor. 18 Pa. C.S.A. § 4952(b)(5).

A first-degree felony was **charged in this case**, and thus the trial court properly graded Felder's conviction for witness/victim intimidation as a first-degree felony pursuant to subsection 4952(b)(2). Felder's alternative interpretation of this subsection would require us to insert additional language into the statute, namely that the first-degree felony charge "continued to exist in the case at the time of sentencing." Nothing in section 4952(b)(2) suggests that the legislature intended such a result. To the contrary, the statute's focus on the most serious crime charged makes eminent sense, since the relevant charge is the most serious one a criminal defendant attempted to escape by use of intimidation.

*Felder*, 75 A.3d at 516-17 (emphasis in original).

Applying this Court's reasoning from *Felder*, we conclude the evidence was sufficient to support Appellant's convictions of intimidation and retaliation

- 9 -

as a first-degree felony despite his acquittal of aggravated assault charges stemming from the events of August 14, 2016. This aspect of Appellant's sufficiency challenge fails.

In the second part of Appellant's sufficiency challenge, he contends the statute does not apply in this case because Bailey was not a witness, victim or a party in a civil matter. Appellant's Brief at 28-29. As in *Rushing, supra*, because the proper interpretation of a statute is a question of law, our standard of review is *de novo* and our scope of review is plenary.

Our Court considered the meaning of a person's "capacity of witness, victim or party in a civil matter" in *Commonwealth v. Nevels*, 203 A.3d 229 (Pa. Super. 2019). There, the Court stated:

> We first address Appellant's argument that Section 4953 is inapplicable because the record fails to reflect that Mr. and Mrs. Jones testified in a civil matter. In review of Section 4953 and its application by Pennsylvania appellate courts, both Appellant and the Commonwealth are incorrect that Section 4953 only applies to witnesses or victims in civil matters.
>
> Prior to December 20, 2000, Section 4953 read: "[a] person commits an offense if he harms another by any unlawful act in retaliation for anything lawfully done in the capacity of witness or victim." 18 Pa.C.S.A. § 4953(a) (prior version). However, the current version, which took effect on December 20, 2000, added the phrase "or a party in a civil matter." 18 Pa.C.S.A. § 4953(a). Since coming into effect, the statute has been applied, by both the Pennsylvania Supreme Court and this Court, to victims and witnesses in criminal proceedings. *See, e.g.*, *Commonwealth v. Ostrosky*, 589 Pa. 437, 909 A.2d 1224, 1232-1233 (2006) (holding that Section 4953 did not apply to victims of a criminal proceeding only because a single threat did not result in objective harm to victims); *Commonwealth v. Brewer*, 876 A.2d 1029 (Pa. Super. 2005) (affirming conviction under Section 4953 of retaliation against witnesses in a criminal proceeding), *appeal*

> ***denied***, 585 Pa. 685, 887 A.2d 1239 (2005). We therefore
> conclude, mindful of relevant case law and the rules of statutory
> interpretation, that retaliation against victims or witnesses in
> criminal proceedings may be properly prosecuted under Section
> 4953.

***Id.*** at 243 (footnote omitted).

As the most recent decision from our Court addressing this issue,

***Nevels*** is binding. We recognize that, on July 31, 2019, our Supreme Court

granted allowance of appeal in ***Nevels***, limited to the following issue:

> Whether the evidence was insufficient as a matter of law to the
> charges of Retaliation Against Witnesses or Victim (18 Pa.C.S.
> § 4953(a)), where the evidence demonstrated that if Petitioner
> had retaliated against anyone, no such person had been party in
> a civil matter, but rather had testified or was about to testify in a
> criminal matter?

***Nevels***, 216 A.3d 1042 (Table) (Pa. 2019).[3] However, unless and until the

Supreme Court says otherwise, this Court's decision in ***Nevels*** is binding

precedent. As we explained in ***Commonwealth v. Pepe***, 897 A.2d 463 (Pa.

Super. 2006):

> It is beyond the power of a Superior Court panel to overrule a
> prior decision of the Superior Court, ***Commonwealth v. Hull***,
> 705 A.2d 911, 912 (Pa. Super. 1998), except in circumstances
> where intervening authority by our Supreme Court calls into
> question a previous decision of this Court. ***Commonwealth v.***
> ***Prout***, 814 A.2d 693, 695 n. 2 (Pa. Super. 2002).

***Id.*** at 465. As was the situation in ***Pepe***, the Supreme Court has done nothing

more in ***Nevels*** than grant an appeal for the purpose of determining whether

---

[3] ***See*** 32 WAP 2019.

- 11 -

a defendant can be guilty of retaliation under Section 4953(a) if the person allegedly retaliated against has not been a witness in a civil matter. Because our Supreme Court has not yet ruled upon the question, it is beyond the power of this panel to overrule **Nevel**. Appellant's second sufficiency issue fails.

In his third issue, Appellant claims the verdicts on the intimidation and retaliation charges were against the weight of the evidence, a challenge he preserved by raising it in his post-sentence motion. As this Court has explained:

> [A]ppellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Corvin v. Tihansky**, 184 A.3d 986, 992 (Pa. Super. 2018) (quoting **Phillips v. Lock**, 86 A.3d 906, 919 (Pa. Super. 2014) (internal quotation marks and citation omitted)).

> We stress that if there is any support in the record for the trial court's decision to deny the appellant's motion for a new trial based on weight of the evidence, then we must affirm. An appellant is not entitled to a new trial where the evidence presented was conflicting and the fact-finder could have decided in favor of either party.

*Id.* at 992-93 (quoting *Winschel v. Jain*, 925 A.2d 782, 788 (Pa. Super. 2007) (additional citations omitted)).

Here, the trial court reviewed Appellant's assertion that the intimidation and retaliation convictions were against the weight of the evidence because the jury acquitted Appellant of aggravated assault and firearms violations. The court also considered Appellant's contention that the verdict shocks the conscience and is against the weight of the evidence because the jury rejected Bailey's claim that Appellant committed aggravated assault.

The court explained, as we have above, that a defendant need not be convicted of an underlying crime to be found guilty of intimidation and retaliation, and that consistency in a verdict is not required. Trial Court Opinion, 2/25/19, at 5-7. The court noted:

> In this case, it was the sole province of the jury, as the fact finder, to assess [Bailey's] credibility and determine the weight to be given his testimony and resolve any conflicts in his testimony. Here, the jury weighed the evidence presented, evaluated [Bailey's] testimony, and evidently found him credible in some respects, as it was entitled to do.

*Id.* at 8. The court pointed to its instruction to the jury, explaining that the jury could disregard all of a witness's testimony if the jury found a witness falsified all or some testimony, or that the jury could accept that part of the testimony it found to be true while rejecting the part not worthy of belief. *Id.* (citing Jury Instructions, Notes of Testimony, 5/16/17, at 11). The court concluded:

> Therefore, the jury could have believed some of [Bailey's] testimony, but not all. The jury's inconsistent verdicts are not so contrary as to shock one's sense of justice because the jury may have found [Appellant] not guilty of aggravated assault [and weapons charges], but could still have believed [Bailey's] testimony that [Appellant] intimidated, or attempted to intimidate, him from speaking to the police about the stolen gun and that [Appellant] had physically attacked [Bailey] in retaliation for speaking to the detective about the crime.

*Id.*

This Court will not substitute its judgment for the finder of fact, recognizing the finder of fact "is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citation omitted). Finding no abuse of discretion in the trial court's rejection of Appellant's weight of the evidence claim, we will not disturb it.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/28/20